IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



HENRICO COUNTY SCHOOL BOARD,

    Plaintiff,

v.                     Civil Action No. 3:18-cv-110

GREGORY MATTHEWS,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on HENRICO COUNTY SCHOOL BOARD'S AMENDED MOTION FOR SANCTIONS (ECF No. 199). The Court has reviewed the supporting, opposing, and reply memoranda; has considered the evidence adduced on March 6, 2019 and March 18, 2019; and has considered the argument presented on June 21, 2019. For the following reasons, HENRICO COUNTY SCHOOL BOARD'S AMENDED MOTION FOR SANCTIONS (ECF No. 199) (the "Amended Sanctions Motion") will be granted in part as to Kandise Lucas ("Lucas"), denied in part as to Lucas, and denied as to Tonie and Gregory Matthews (the "Matthews").

## BACKGROUND

The Amended Sanctions Motion is the final step, at least in this Court, in a proceeding that began under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. (the "IDEA").

It is therefore necessary to understand certain parts of the IDEA and the facts that have brought the parties to this point.

## A. The IDEA Provisions Involved

Under the IDEA, students with disabilities are entitled to a Free Appropriate Education ("FAPE"). 20 U.S.C. § 1412(a)(1)(A). The FAPE is provided through an individualized educational program ("IEP"), 20 U.S.C. § 1414(d), that is to be arrived at through a collaborative process undertaken between parents and educators (referred to as an individualized education program team ("IEP Team")). 20 U.S.C. § 1414(d)(1)(A). Under 20 U.S.C. § 1414(d)(1)(B), the IEP Team may include "individuals who have knowledge or special expertise regarding the child."

The IDEA provides certain procedural safeguards "with respect to the provision" of a FAPE. 20 U.S.C. § 1415(a). Among those safeguards is the right to challenge the IEP in a so-called "due process hearing." 20 U.S.C. § 1415(f)(1)(B)(iii). The IDEA provides that any party to that hearing (or an appeal thereof to a state educational agency) "shall be accorded [inter alia] the <u>right to be accompanied and advised by counsel and by individuals</u> <u>with special knowledge or training</u> with respect to the <u>problems of</u> <u>children with disabilities</u>." 20 U.S.C. § 1415(h)(1) (emphasis added).

In the vernacular of the IDEA, the "individuals with special knowledge or training with respect to the problems of children

2

with disabilities" referred to in Section 1415(h)(1) have come to be known as "advocates." That is how the representatives in this case have been, and will continue to be, called.

The IDEA does not specifically state whether a non-attorney advocate can represent parties in a due process hearing. In the 2003-2004 reauthorization, a house bill contained a provision stating that a party had a "right to be represented by counsel and by non-attorney advocates and to be accompanied and advised by individuals with special knowledge or training with respect to the problems of children with disabilities." 63 Cong. Rec. H3,495 (daily ed. Apr. 30, 2003). However, the final bill enacted in 2004 did not contain that language. Instead, it merely reads that a party "shall be accorded (a) the right to be <u>accompanied and advised</u> by counsel and by individuals with special knowledge or training with respect to problems of children with disabilities." 20 U.S.C. § 1415(h)(1) (emphasis added).

In devising the implementing regulations for the IDEA, the Department of Education concluded that the IDEA was silent on whether a non-attorney advocate could represent a party to a due process hearing, meaning that the representational role of non-attorney advocates was left by the IDEA to be decided by the states. 73 Fed. Reg. 73,017 (Dec. 1, 2008).[1] Thusly informed by

_____

[1] That is a strange conclusion considering that the statutory text allows two kinds of people to accompany and advise parents in

the Department of Education, the states have taken different views on the role of non-attorney advocates in due process hearings under the IDEA. Ten states prohibit lay advocates from representing parents in the due process hearings. Twelve states allow lay advocates to fill a representational role. Twenty-one states have no rules, and eight states leave the matter to the hearing officers who preside over due process hearings. See Perry A. Zirkel, Lay Advocates and Parent Experts under the IDEA, 217 WEST EDUC. L. REP. 19, 21 (2009).

Virginia law allows lay advocates to represent parents in due process hearings and recites that doing so does not put the advocate afoul of the rules defining the unauthorized practice of law. Va. Code Ann § 22.1-214(c) (2019); see Va. Code Ann § 54.1-3904. However, Virginia does not define the qualifications necessary to undertake representation. Nor does Virginia regulate or review non-attorney advocates who undertake a representational role in the due process hearing under the IDEA. As this case shows, the course taken by Virginia is fraught with problems. And,

---

the due process hearing: (1) counsel whose usual role is to represent those whom they accompany to hearings; and (2) individuals with certain special knowledge of a subject but who are not usually representatives of parties to whom they give advice. A reasonable reading of the text is that, in due process hearings, parents can have the help of counsel whose usual role is representational, and they can have the help of people with special knowledge of the problems of children with disabilities who are not counsel and whose role is not representational.

in this case that approach was harmful to the parents and, more importantly, the child.

**B.   The Administrative Case and the Case in This Court**

This case is an appeal from a decision of an administrative hearing officer in a due process hearing in which the Matthews claimed that Henrico County School Board (the "School Board") was not providing their autistic son, G.M., a FAPE.   The Matthews initiated the due process hearing because they were not satisfied with G.M.'s progress under the School Board's IEP.   To that end, the Matthews sought the help of two advocates, Lucas and Sa'ad El-Amin ("El-Amin") to file, and to advise during, the due process hearing with the goal of having their son placed in the Faison School, a private school which specializes in educational programming for students with autism.[2]   The administrative hearing officer who presided over the due process hearing agreed with the Matthews, holding that the School Board had failed to provide G.M.

---

[2] Neither IDEA nor any other authority authorizes these advocates to represent the parents in any way once the matter is appealed to federal court.   See 20 U.S.C. § 1414(d)(1)(B)(vi) (stating that an individual who has knowledge or special expertise regarding the child can be part of the individualized education program team, but nowhere saying that advocates can represent the parents after they are represented by legal counsel); Va. Code Ann. § 22.1-214 (stating that acting as an advocate in a due process hearing is an exception to Virginia's law against the unauthorized practice of law).   Further, only licensed lawyers admitted to practice may represent a party to a case that is filed in this Court.   Local Civil Rule 83.1(A), (B), (D), (F), (H).

a FAPE and awarding G.M. private school placement as a compensatory service for the School Board's failure to provide G.M. with a FAPE. Following the hearing officer's decision, the Faison School allowed G.M. to attend for free, which he did from January 28, 2018 to May 11, 2018. The School Board never paid for G.M. to attend Faison.

As permitted by IDEA, the School Board appealed the administrative hearing officer's decision by filing this action. The Matthews then retained Charlotte Hodges ("Hodges") as their counsel in this case. However, the record shows that Lucas stayed in the picture and continued to give advice to the Matthews about all aspects of the case (notwithstanding that there is no authority allowing an advocate to participate in or direct litigation in federal court).[3] The record also shows that Lucas undercut Hodges in her representation of the Matthews and ultimately convinced the Matthews to discharge Hodges.

The Sanctions Motion against Lucas and the Matthews was prompted in large part by the fact that, during this case, the Matthews, assertedly with knowledge and encouragement of Lucas moved out of Henrico County and into New Kent County without disclosing that fact to the School Board or the Court. According

---

[3] There is, however, no impediment to the retention of an advocate to consult with counsel in federal court litigation. There is nothing in the record that indicates that Lucas was retained by Hodges.

to the School Board, that move had the effect of relieving it of any obligation for G.M.'s education under the IDEA. Thus, it is important to understand the facts surrounding the move.

The record shows that, on March 13, 2018, three weeks after this action was filed,[4] the Matthews signed a lease in New Kent County that became effective on May 1, 2018. However, the record also shows that, in February 2018, the Matthews had begun to take steps toward moving from Henrico County to New Kent County. See March 6, 2019 Tr. (ECF No. 197) at 90, 112 (testimony of Gregory and Tonie Matthews showing that they had decided to move in February 2018). On April 5, 2018, the Matthews, with Hodges as counsel, filed their Answer to the Complaint therein stating that they were residents of Henrico County. Neither in their Answer nor in any other way did the Matthews mention that, earlier in February, they had decided to move to New Kent County. Nor did they disclose that, in March, they had signed a lease on a house in New Kent County. See id. at 90-92.

Sometime during May 2018, the Matthews moved to New Kent County and started utility services at their New Kent County residence. In May 2018, the Matthews also changed their cell phone service, used their New Kent County address for the purpose of initiating that cell phone service, and canceled utilities at the

_____

[4] The action was filed on February 20, 2018.

7

Henrico County address. Discovery relating to the sanctions issue also disclosed that the Matthews discussed the subject of a move to New Kent County with both Lucas and Hodges. See id. at 117-122, 124-127.

On June 4, 2018, without the Matthews' knowledge, Lucas filed another due process complaint for the Matthews (the seventh one that she filed related to G.M., which were all related to the same subject matter) in which the address listed for the Matthews was their Henrico residence. See id. at 108-09; March 18, 2019 Tr. (ECF No. 194) at 259-74, 472-73. On June 5, 2018, the Matthews filed in this Court a motion for a preliminary injunction, asking the Court to require the School Board to comply with the hearing officer's order and to pay for G.M.'s placement at the Faison School. DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION AND PENDENTE LITE RELIEF (ECF No. 23).

On June 14, 2018, Tonie Matthews sent a text to Lucas that includes information that the Matthews "[we]re moving" to New Kent County and that Tonie Matthews did not "want to be caught up in them [the School Board] finding out that we are moving." June 14, 2018 Text Messages Between Tonie Matthews and Lucas (ECF No. 134-9). That text also showed that the Matthews and Lucas knew that there was a possibility that a move might affect this action. See id. (Tonie Matthews stating "I think that's enough to put the

lawsuit through[.] I'm sure they'll be glad that they won't have to pay for Faison and we're moving").

Lucas responded that, even if the Matthews moved, the School Board would still have to pay for G.M.'s education at Faison. Lucas also told the Matthews on several other occasions that moving out of Henrico County would have no effect on G.M.'s placement at the Faison School. Also, after the Matthews had moved to New Kent County, Lucas encouraged them to file DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION AND PENDENTE LITE RELIEF (ECF No. 23) to require the School Board to pay for G.M.'s placement at the Faison School. March 6, 2019 Tr. (ECF No. 197) at 130-31, 147.

On July 12, 2018, after conferring at the Court's urging, the Matthews and the School Board signed an interim agreement, pursuant to which the School Board would pay for G.M.'s education at the Faison School in the future until this action was resolved. The interim agreement thereby eliminated the need for a temporary injunction. It also provided: (1) for mediation of the case on the merits before a Magistrate Judge on August 13, 2018; and (2) for a stay of this action pending that mediation (except that the Matthews were to produce certain information before the mediation).

Thereafter, the Magistrate Judge rescheduled the mediation for July 20, 2019. In that court-ordered mediation conference, the School Board told the Magistrate Judge that it had just learned

that the Matthews were now living in New Kent County, and that they had lived there since sometime in May. Hodges (the Matthews' attorney at the time) said she knew nothing about this.

On July 23, 2018, the Matthews filed a letter with the Court stating that: (1) they were disappointed that Hodges had not brought to the Court's attention that they were considering moving to New Kent County; (2) Hodges had called the Matthews to say that she was sorry and that she had forgotten about a text message sent to her by Tonie Matthews; and (3) that Hodges would no longer be their counsel in this case. Letter dated July 22, 2018 (ECF No. 78) at 1-2. Lucas helped write the July 23 letter, and she advised the Matthews to discharge Hodges. The Matthews then filed a second letter asking the Court to give them extra time to find an attorney. Letter dated July 25, 2018 (ECF No. 87). That request was granted; and the Matthews retained new counsel (Michael B. Gunlicks, Esq.) shortly thereafter.

The School Board took the view that it was not obligated to provide any service to G.M. because its obligations under the IDEA ran only to residents of Henrico County. Therefore, upon learning that the Matthews had moved, the School Board requested to conduct limited discovery on the topic of the move, and to file any motions related to that revelation. That request was granted and the School Board was allowed to take depositions of, and to subpoena any documents from, the Matthews, Lucas, El-Amin, and Hodges on

the topic of the change in residence by the Matthews. ORDER dated July 23, 2018 (ECF No. 79).

After the completion of that discovery, the School Board filed HENRICO COUNTY SCHOOL BOARD'S MOTION FOR SANCTIONS (ECF No. 129) against Lucas and the Matthews, among others. The Court heard that motion on December 4, 2018 and held that Hodges and El-Amin would not be sanctioned. The Court advised Lucas that the charges being made against her in the School Board's motion were serious, and asked Lucas if she would like to retain counsel, to which Lucas responded: "yes." Further proceedings on the motion for sanctions were delayed until after Lucas had retained counsel.

At the hearing on December 4, 2018, the Court asked the parties whether this case was moot because of the Matthews' move. Then, and in a follow-up telephone conference held on December 12, 2018, the parties agreed that this case was moot. Thereafter, the Court entered an ORDER dated December 14, 2018 (ECF No. 159), denying HENRICO COUNTY SCHOOL BOARD'S MOTION FOR JUDGMENT (ECF No. 131) as moot and thereupon dismissing the case as moot. See ORDER dated December 14, 2018 (ECF No. 159). However, the Court retained jurisdiction for the limited purpose of deciding whether the Matthews or Lucas should be sanctioned. See ORDER dated December 14, 2018 (ECF No. 159).[5] Thereafter, the School Board filed the

---

[5] In the December 4, 2018 hearing, the Matthews disclosed that they had arranged for New Kent County to provide funding for G.M.

Amended Sanctions Motion. On March 6 and March 18, 2019, the Court held evidentiary hearings on that aspect of the School Board's motion for sanctions. See generally March 6, 2019 Tr. (ECF No. 197); March 18, 2019 Tr. (ECF No. 194). During those hearings, the following witnesses testified: Lucas; the Matthews; Donice Davenport, the School Board's director of exceptional education; Dr. Crawford, another special education advocate; and Dr. Spencer, who was an expert for the Matthews in G.M.'s due process hearing.

## DISCUSSION

### A. Legal Standard

In the Amended Sanctions Motion, the School Board, invoking the Court's inherent powers, asks that Lucas and the Matthews be sanctioned by being required to pay the School Board's attorneys' fees.[6] The burden is on the moving party to show entitlement to attorneys' fees as a sanction when sought pursuant to the Court's inherent powers. Stradtman v. Republic Servs., Inc., 121 F. Supp. 3d 578, 581 (E.D. Va. 2015). The Fourth Circuit has instructed that the inherent power to sanction "must be exercised with the greatest restraint and caution, and then only to the extent

_____

to attend Faison School. See December 4, 2018 Tr. (ECF No. 163) at 16.

[6] The School Board did not specify or prove the quantum of fess sought or identify precisely the fees that they wanted Lucas and the Matthews to pay. At argument, the School Board asked to be granted leave to file a detailed fee application.

necessary," because that power is not regulated by Congress. United States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir. 1993). In Shaffer, the Fourth Circuit held that, if a court is called upon to use its inherent power to dismiss a case, the Court must consider the following factors:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Id. at 462-63.

However, in Shaffer, the Court of Appeals did not specify when and how a court should use its inherent powers to impose sanctions other than dismissal. But, the Supreme Court has said that a court has the inherent power to impose sanctions—including attorneys' fees—for bad-faith conduct. Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991). The Supreme Court also made clear that "the inherent power extends to a full range of litigation abuses." Id. at 46. Chambers thus teaches that the Court's inherent powers to sanction may be applied upon a finding of litigation abuse. Chambers also instructs that the inherent power "must be exercised with restraint and discretion" and that attorneys' fees may be imposed "when a party has 'acted in bad faith,

vexatiously, wantonly, or for oppressive reasons.'" Id. at 44-46
(quoting Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S.
240, 258-59 (1975)); see also In re Crescent City Estates, LLC,
588 F.3d 822, 831 (4th Cir. 2009) (saying that the court's inherent
powers "permit awards of attorneys' fees against attorneys whose
actions compromise standards of professional integrity and
competence").

In Chambers, the Supreme Court explained the origin and reach
of the inherent power and approved use of the power to
impose sanctions for practicing fraud on courts, defiling "the
very temple of justice," or delaying or disrupting litigation in
bad faith. Chambers, 501 U.S. at 46. The Supreme Court's
reasoning in Chambers shows that the purpose of the inherent power
is to make sure that the court may "police itself, [] serving the
dual purpose of 'vindicat[ing] judicial authority without resort
to the more drastic sanctions available for contempt of court and
mak[ing] the prevailing party whole for expenses caused by his
opponent's obstinacy.'" Id. (alterations in original) (quoting
Hutto v. Finney, 437 U.S. 678, 690 n.14 (1978)).

These principles guide the inquiry into whether, as the School
Board urges, Lucas and the Matthews should be sanctioned under the
Court's inherent powers by an award of attorneys' fees or
otherwise.

**B.   Sanctions Sought Against Lucas**

The School Board argues that Lucas should be sanctioned for actions that affected this case, directly and tangentially.   In both instances, says the School Board, Lucas has acted in bad faith and, in so doing, has caused the School Board to incur significant legal expense.   Tonie Matthews has testified that Lucas made this case "worse."   See March 6, 2019 Tr. (ECF No. 197) at 160.   In the Amended Sanctions Motion, the School Board puts forward three broadly stated reasons why Lucas should be sanctioned under the Court's inherent powers.   These asserted sanctionable acts fall into three broad categories.   Each will be considered in turn.

**1.   Counseling the Matthews on the Effects of the Move to New Kent County and Failing to Disclose the Move**

First, the School Board claims that Lucas should be sanctioned for advising the Matthews that their move to New Kent County would not adversely affect their ability to enforce the administrative hearing officers' order that G.M. was entitled to receive compensatory education services.   As the School Board contends, the record clearly shows that Lucas advised the Matthews that a move to New Kent County would not adversely affect the ability to collect on the compensatory services awarded by the administrative hearing officer.   The record also shows that, while this action was pending and before the Matthews filed their preliminary injunction motion, Lucas knew of the Matthews' plan to move and

that the move (which occurred over a two- to three-week period) was underway.

However, as explained below, there was a credible basis for Lucas' belief that the move would not affect the Matthews' ability to collect on the hearing officer's award of compensatory services, and that is important in deciding whether Lucas acted in bad faith when she advised the Matthews of that belief.

Unfortunately, in extended litigation on the issue of whether Lucas (and the Matthews) should be sanctioned for not disclosing that the Matthews had moved from Henrico County to New Kent County, the School Board has failed to explain exactly why the Matthews' move to New Kent County freed the School Board from providing the compensatory services ordered by the administrative hearing officer. Indeed, no counsel has presented to the Court the authority from the Fourth Circuit and other circuit courts holding that, at least in certain situations, a move out of the school district does not necessarily moot the case or end the obligation of school boards under the IDEA. For example, in Z.G. by & through C.G. v. Pamlico Cty. Pub. Sch. Bd. of Educ., 744 F. App'x 769 (4th Cir. 2018)—which was decided on July 16, 2018, four days before the settlement conference in this case—the Fourth Circuit held, albeit in a footnote in an unpublished opinion, that, "[a]lthough [the student] is no longer enrolled in [the school], the plaintiffs' suit is not moot," id. at 778 n.15, because the

plaintiffs' amended complaint in that case sought "a wide range of remedies, including reimbursement for [the student's] educational expenses." Id. "Thus, the amended complaint present[ed] a live controversy." Id. That view adhered to the view set out in the decisions of several other Circuit Courts of Appeals.[7]

That the parties agreed that the case was moot does not settle the question whether Lucas's conduct was sanctionable bad faith conduct. To address that question, it is necessary to assess

---

[7] See, e.g., D.F. v. Collingswood Borough Bd. of Educ., 694 F.3d 488, 497 (3d Cir. 2012) ("[A] rule that rendered IDEA claims for compensatory education moot upon a move out of district would allow 'a school district [to] simply stop providing required services to a student with the underlying motive of inducing this student to move from the district, thus removing any future obligation under IDEA which the district may owe to the student,' and thereby frustrating the purpose of the IDEA. We find this rationale indisputably persuasive." (alteration in original) (citation omitted) (quoting Neshaminy Sch. Dist. v. Karla B., No. 96-3865, 1997 WL 137197, at *5-6 (E.D. Pa. Mar. 20, 1997))); Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 89 (2d Cir. 2005) (observing that several circuits have held that "a claim for compensatory education or reimbursement can defeat a mootness challenge in an IEP placement dispute"); Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 18 (1st Cir. 2003) (concluding that "[t]he presence of an actionable claim for compensatory education will insulate an IDEA case against a mootness challenge even after the child's eligibility for special education services ends"); Indep. Sch. Dist. No. 284 v. A.C., 258 F.3d 769, 774-75 (8th Cir. 2001) (holding that the plaintiff's compensatory education claim was not moot because the claim related to the school district's past IDEA violations and sought compensatory remedies); Capistrano Unified Sch. Dist. v. Wartenberg, 59 F.3d 884, 890 (9th Cir. 1995) (determining that because the plaintiffs' claim was for tuition reimbursement, the claim presented a live controversy). It is also quite troubling that neither counsel for the Matthews nor counsel for Lucas brought Z.G. (and the other authority) to the Court's attention.

whether there was support for the advice that she gave to the Matthews.

That assessment begins with a look at the due process hearing to see whether the hearing officer's opinion fell within the line of authority holding that a move does not affect the school district's obligations. Here, although it is not entirely clear what remedies the Matthews sought in the operative due process complaint, the Matthews did allege that G.M. had been denied a FAPE for the entire 2016-17 school year, and that, as a result of that denial, one remedy that they requested was to have "[t]he district . . . develop a plan under which compensatory services be provided for the time period in which [G.M.] was unable to attend school due to the safety concerns presented by abusive school staff." Third Due Process Complaint (ECF No. 75-1) at 49 (emphasis added). The administrative hearing officer's decision similarly discussed compensatory educational services. In fact, after holding that the School Board had failed to provide a FAPE, the administrative hearing officer held that:

> Compensatory educational services are, 'an award of education services that are offered prospectively to compensate for a previously inadequate program.' In fact, courts have held that the purpose of compensatory educational services as a remedy under the IDEA is to deliver an eligible student with services designed to place that student in the same position they would have been had they always been receiving FAPE.

Hearing Officer's Decision (ECF No. 1-1) at 19 (emphasis added) (citation omitted) (quoting Reid v. District of Columbia, 43 IDELR 32 (D.C. Cir. 2005)); see also G ex rel. RG v. Fort Bragg Dependent Sch., 343 F.3d 295, 308 (4th Cir. 2003) ("[A]n award of 'compensatory education'—educational services ordered by the court to be provided prospectively to compensate for a past deficient program—may be 'appropriate relief' under the IDEA."). Further, the administrative hearing officer said that G.M. "should be awarded private day placement as a compensatory service, in light of the need of early intervention concerning his autism, the failure of HCPS to sufficiently identify all areas of need and to provide him with proper goals, service, and accommodations." Hearing Officer's Decision (ECF No. 1-1) at 20.

Without mentioning the significant authority that suggests otherwise,[8] the School Board takes the position that it owed nothing to G.M. or the Matthews because they had moved to New Kent County. And, of course, the failure to disclose the move was the driving reason for filing the Amended Sanctions Motion, asking that sanctions (attorneys' fees) be imposed on Lucas (and the Matthews). See March 6, 2019 Tr. (ECF No. 197) at 20 (stating that the School Board "would have had no need to" provide

---

[8] See supra footnote 7 (collecting cases in which Circuit Courts of Appeals held that a move did not moot a claim for compensatory education).

educational services because "[w]e're not responsible for providing educational services for students who are not residents of Henrico County"); id. at 31 (stating the answer "No" to the question "Would the school board have offered to pay for a private placement if the school board knew that the student was not a resident of Henrico County?").

However, even though the parties agreed that the case was moot, there is significant authority in support of the view that Lucas expressed to the Matthews. Under its very limited inherent powers, the Court cannot sanction someone who advances a position that has some persuasive authority to support the argument. And, that is so even though the parties agreed that the case was moot.

It might well be that, if the effect of the move had been litigated, the School Board would have prevailed.[9] But, on this record, the School Board has not established that, on that issue, Lucas acted in bad faith.

### 2. The Filing of IDEA Due Process Hearings to Cost the School Board Money

The School Board seeks sanctions (attorneys' fees) because Lucas engaged in vexatious conduct by filing seven due process

---

[9] To be clear, the Court does not hold that the Matthews' move did not moot the case. The Court may have disagreed with the persuasive authority and held that a move necessarily mooted the case. Rather, the Court holds only that Lucas cannot be sanctioned when there is an issue (backed by authority) that the move did not moot the case.

complaints against the School Board that all essentially made the same claims as made in the due process complaint involved here. And, indeed, during this litigation, on June 4, 2018, months after this case had been filed in this court, Lucas filed the seventh due process complaint with Henrico County, without the knowledge or consent of the Matthews, and when she knew that the Matthews had already moved to New Kent County.[10]

There is no doubt that Lucas initiated many due process hearings for many parents and that she did so to cost the School Board money in the form of attorneys' fees and litigation costs. Lucas has, in fact, publicly stated that she purposefully devised and implemented that strategy to make matters difficult for the School Board and to cost the School Board money, so as to get her way and make the School Board do as she wanted. In particular, Lucas was quoted as saying to a reporter for the *Richmond Times-Dispatch* that she had filed a large number of due process complaints against the School Board to run up the School Board's legal fees. See Plf. Ex. 10 (stating, as direct quotes from Lucas,

---

[10] There is, of course, quite a difference in filing a due process complaint knowing that the child then does not live in the district and in advising (after the parents have secured an award of compensatory services in a due process hearing) that the change of residence to another school district would not adversely affect the ability to enforce the award in the due process hearing. The former circumstance is not on appeal in this case. Nonetheless, it is a factor in assessing Lucas' conduct.

"It was intentional to start filing due process after due process to show the financial impact we could have if the school division didn't address these issues" and "We wanted to send a strong message to the school division: 'If you don't listen to us, we will start costing you money.' I think we got that message across.").[11] Lucas's admission of this scorched earth strategy aligns with the evidence because Lucas filed what was essentially the same due process complaint as to G.M. seven times, asking for a due process hearing each time. See Due Process Complaints (ECF No. 75-1).

The statement in the newspaper article that discloses Lucas' scorched earth strategy was made on September 30, 2018 while this case was pending, but the statement does not mention this case. Nonetheless, it is reasonable to infer, from the fact that Lucas filed seven due process complaints (one while this case was pending in this Court) that the due process hearing involved in this case

---

[11] Although Lucas indicated that she was objecting to the articles based on hearsay during the evidentiary hearing on March 18, 2019, see March 18, 2019 Tr. (ECF No. 194) at 455, 457-58, she withdrew that objection in KANDISE LUCAS' RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION FOR SAN CTIONS (ECF No. 209), arguing that the Court should consider the articles as prior consistent statements relating to her intent to raise the School Board's noncompliance issues. Id. at 3.

was part of the strategy described by Lucas in the newspaper article.[12]

However, it cannot be said that the due process complaint that is the subject of this case was without merit. And, after all, the administrative hearing officer ruled in the Matthews' favor on the due process complaint that is the subject of the School Board's appeal in this case. Thus, on this record, notwithstanding that the Court finds Lucas' admitted scorched earth strategy to be reprehensible, the School Board has not proved an entitlement to an award of sanctions against Lucas for litigation abuse under the Court's inherent powers.[13]

### 3. Lucas's Untrue Testimony

Third, the School Board seeks sanctions because Lucas made several statements in this case that were false. An examination of each alleged false statement shows that Lucas made false statements.

_____

[12] As part of Lucas's scorched earth strategy, she initiated, while this case was pending, two other due process hearings without consent of the Matthews on February 23 and June 4, 2019. That is common law barratry. See Barratry, Black's Law Dictionary (11th ed. 2019) ("The bringing of a lawsuit or other legal proceeding without the permission or consent of the named plaintiff or complainant."). However, those matters are not before the Court, and the Matthews did consent to file the due process hearing that is the subject of this appeal.

[13] Of course, if Virginia had some regulatory control over the licensing and discipline of these "advocates," Virginia could sanction Lucas' reprehensible tactics.

### (a)  The So-Called "Advice" From A Hearing Officer

Lucas testified that she received legal advice on the effect of the Matthews' move from the hearing officer in another case involving the Chesterfield County School Board.  That testimony was false, and Lucas knew it to be false.[14]  When pressed, she admitted that the "advice" that she received was only the text of the decision.  March 18, 2019 Tr. (ECF No. 194) at 295-298.

### (b)  False Sworn Statement

During the discovery process permitted by the Court to allow the School Board to explore the facts about the Matthews' move, Lucas signed a sworn statement (filed with the Court) that she had not been assisted by an attorney when preparing a motion to quash her deposition and the related requests for production of

---

[14] The Court was forced to admonish Lucas on multiple occasions for trying to evade questions.  See id. at 250 (The Court stating to Lucas that it was "striking your testimony about whether this report is wrong, and I don't want you giving any opinions on it anymore, and I want you to listen to the questions and answer the questions that are asked"); id. at 252 (The Court asking Lucas to "[l]isten to the question, and answer the question.  What happens is every time you shift grounds, change the question, you become less credible"); id. at 352-353 (The Court stating to Lucas that "[t]he English language has a meaning and you're smart enough to understand it.  Don't be telling me an impartial hearing officer gave you advice and tried - instead of saying based on what I read from his decision.  You have got to pay attention to what the question is and use the language.  The more you use language [im]properly, the more you dissemble and sort of argue like that, the harder it is to believe anything you have to say, because I know the hearing officer is not going to be giving you advice.  He can't any more than I can give you advice.  Quit saying things like that").

documents.  See Motion to Quash Local Rule 83.1(M) Certification (ECF No. 84-1).  However, Lucas subsequently admitted that she had relied on an attorney when she filed that motion.  See Statement from Kandise N. Lucas per Judge Payne's Order (ECF No. 92) ("I also relied upon the case law provided to me by Attorney Selene Almazan, the Legal Director of Parent Attorneys and Advocates, Inc., COPAA . . . .").

### (c)  The Allegedly Erroneous Quotation in The Newspaper Article

In support of the Sanctions Motion, the School Board offered the previously cited newspaper article which attributed the following quotations to Lucas:

> It was intentional to start filing due process [complaint] after due process [complaint] to show the financial impact we could have if the school division didn't address these issues.

> *  *  *

> We wanted to send a strong message to the school division: "If you don't listen to us, we will start costing you money."  I think we got that message across.

During the evidentiary hearing on March 18, 2019, Lucas testified falsely that a *Richmond Times Dispatch* reporter had misquoted her in the September 30, 2018 article and that she had asked the reporter to correct that quotation.  March 18, 2019 Tr. (ECF No. 194) at 325, 453-55.  About the article, Lucas testified that:  "My statement was that I was filing due process complaints to raise the concerns related to children of color.  I did not

state that our purpose in filing due process complaints was to raise financial issues in the school division." Id. at 456. She also answered "yes" to the School Board's counsel's question that the reporter "wrote down the wrong thing," and then she said that the reporter quoted her wrong. Id. at 456-57. She also said that there was a later article that clarified her intent. Id. at 460-61. None of that testimony was true. Indeed, after a brief consultation with the reporter, the parties confirmed in open court that there was no such clarifying article and that no request for clarification had been made by Lucas. Id. at 463.

Lucas knew that the statements in Section 3(a)-(c) above were untrue when she made them. The Court and the School Board had to devote time to address her false testimony, but her statements during the proceedings did not cause any serious delay that merits an award of attorneys' fees. However, Lucas will be sanctioned for giving false testimony.

#### 4.   **Chambers** and the **Shaffer** Test Applied

As previously explained, sanctions cannot be imposed on Lucas for expressing her belief that the Matthews' move to New Kent County did not foreclose their ability to collect on the award of compensatory service made by the administrative hearing officer. And, the School Board has not met its burden to show an entitlement to an award of sanctions for Lucas' acknowledged filing of numerous due process complaints.

That leaves for decision whether Lucas can be sanctioned for giving untrue testimony. There is no real doubt that the giving of false testimony is sanctionable under Chambers because giving false testimony defiles the very temple of justice, is the practice of a fraud on the court, and disrupts litigation, all in bad faith. Under Chambers a sanction for these reasons is necessary to vindicate judicial authority.

Although Chambers and Shaffer focus on awarding attorneys' fees as a sanction pursuant to the inherent judicial factor, the award of attorneys' fees usually goes to a prevailing party (i.e. to "'make the prevailing party whole for expenses caused by his opponent's obstinacy.'" Chambers, 501 U.S. 46 (quoting Hutto v. Finney, 437 U.S. 678, 690 n.14 (1978)). The School Board cannot be a prevailing party because its appeal was dismissed upon an agreement that the case was moot (even when that may not have been so).[15] However, that does not foreclose an award of sanctions to vindicate judicial authority.

And, although Shaffer's approach to assessing sanctions was not in the context presented by the facts of this case, the Shaffer factors nonetheless provide helpful guidance here. Thus, it is well to recall that Shaffer teaches courts to look at the following factors:

---

[15] For these purposes, it makes no difference that the case may not have been moot.

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Shaffer, 11 F.3d at 462-63. Here, most of these factors do not apply.

To begin, it is beyond doubt that giving false testimony is wrongful. Indeed, it is perhaps the epitome of wrongfulness in a judicial proceeding. So, Shaffer Factor (1) is satisfied and counsels in favor of sanctions.

Shaffer Factor (2) does not apply. Lucas' counsel was in no way involved in her untruths.

Shaffer Factor (3) is met because the judicial process and the administration of justice is prejudiced when untruthful testimony is given. In like fashion, the disproving of falsity takes time and distracts from resolution of the principal, substantive issues in a case.

Shaffer Factor (4) asks whether the School Board, the victim of the sanctionable conduct was damaged, and, if so, how much. It is correct that the School Board's counsel had to unravel the untruths told by Lucas. But that was done quickly and effectively, and, in any event, there is no record of the expense incurred in

achieving that result. Moreover, the real victim here is the judicial process and the administration of justice. Hence, this factor merges with Shaffer Factor (3).

Shaffer Factor (5) tells the Court to consider whether sanctions other than attorneys' fees will be more effective in rectifying the sanctionable conduct. As discussed below, there is available an effective sanction other than an award of attorneys' fees.

Finally, Shaffer Factor (6) calls for an assessment of the public interest. This factor actually melds with Shaffer Factor (3) on the facts here at issue because the public interest calls for sanctioning false testimony to deter it.[16]

---

[16] In its reply brief in support of the Sanctions Motion, the School Board summarily asks for an order that: (1) enjoins "Lucas from providing advice or consultation on any legal or procedural matters to any parties in any proceedings in the federal and state courts of Virginia involving any appeal, or the contemplation of an appeal under [IDEA] or its implementing regulations"; (2) enjoins "Lucas from providing advice or consultation on any legal or procedural matters to any parties in administrative hearings and any proceedings involving any action, appeal, or the contemplation of an appeal under Section 504 of the Rehabilitation Act of 1973 ('Section 504') or Title II of the Americans with Disabilities Act of 1990 ('ADA'), or their implementing regulations; and representing orally, in writing or otherwise, that she has been certified as a special education advocate by any federal or state agency, or by any other organization or entity"; (3) enjoins "Lucas from representing orally, in writing or otherwise, that she has been certified as a special education advocate by any federal or state agency, or by any other organization or entity"; and (4) orders "Lucas to provide a copy of the Order to each individual who is utilizing or may utilize her services as a special education advocate, prior to providing any such services." See HENRICO COUNTY SCHOOL BOARD'S REPLY

Indeed, the Court cannot leave false testimony and filings unsanctioned. Lucas has lied three times in these proceedings. Lying in sworn statements and giving false testimony like Lucas has done is the antithesis of good faith. Therefore, it is fully appropriate to sanction Lucas. Having considered all possible sanctions, the Court concludes that a monetary sanction is best suited to the offense. The record shows that Lucas does not have substantial resources, and that must be taken into account in settling on an appropriate sanction. But, the sanction must be sufficient to deter untruthful testimony and court filings. The Court concludes that a reasonable and fair sanction, taking into account all of the applicable Shaffer Factors and Lucas' financial circumstances, is for Lucas to pay $1,000.00 to the Clerk of Court. In addition, because Lucas made a misrepresentation in a court

---

MEMORANDUM IN SUPPORT OF ITS AMENDED MOTION FOR SANCTIONS (ECF No. 211) at 13. The School Board's request fails for two reasons: (1) it failed to include this request in its motion, and arguments and requests made in reply briefs are normally not considered, see, e.g., United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006); United States v. Al-Hamdi, 356 F.3d 564, 571 n.8 (4th Cir. 2004); and (2) the School Board provides no basis for why the Court can order such a broad injunction under the Court's inherent powers. The Court's inherent powers "must be exercised with the greatest restraint and caution, and then only to the extent necessary" as they are not regulated by Congress. Shaffer, 11 F.3d at 461. The focus of the court's use of its inherent powers is to remedy the wrongs completed in a specific case, not all wrongs done that Lucas committed. See id. at 462-63. The School Board has failed to tether its requested injunction as a remedy for solely the misconduct done in this case. Thus, the Court will not issue the requested injunction.

filing and gave false testimony in the hearing on sanctions, she has made it necessary to take action to vindicate judicial authority. This is best accomplished by enjoining Lucas from participating in any future proceedings in this Court that involve the IDEA.

### C. Sanctions Sought Against the Matthews

The School Board acknowledges that the Matthews' misconduct was not as serious as Lucas's in this case, but, in the School Board's view, the Matthews (particularly Tonie Matthews) engaged in deceit when they purposefully concealed their change of residency. The School Board says that Tonie Matthews knew that residency was a significant issue, as shown by the fact that she asked Lucas several times whether a move would impact her ability to make the School Board pay for tuition and by contemplating filing a lawsuit for being "forced" by the School Board to move. March 6, 2019 Tr. (ECF No. 197) at 123-27; March 18, 2019 Tr. (ECF No. 194) at 403-06.

The Matthews' efforts to conceal their move include: (1) Tonie Matthews transferring the family's mail to be forwarded to her business at Nine Mile Road in Henrico rather than New Kent County (because that change of address would be reported to the School Board); (2) the Matthews failing to tell Faison that they moved; (3) the Matthews delaying enrolling their other children in New Kent County even though they had already moved there; and (4) the

Matthews having G.M. picked up at a day care facility in Henrico rather than their New Kent County address. Greg Matthews was pushing his wife to tell Hodges about the move, but he never brought their move to the Court's attention. See March 6, 2019 Tr. (ECF No. 197) at 92-97; id. at 100-01; id. at 146.

The Matthews point to their factual circumstances and argue that the School Board is the party that protracted this litigation by filing the case in federal court and by pursuing sanctions. Further, the Matthews say that they have no knowledge of the procedure in federal court and before the hearing officer and that they relied on Lucas and, to some extent on Hodges. They also argue that they were caught between Lucas and Hodges, who were not communicating because they differed in their view on the case. And, they contend that Lucas should have recused herself instead of inserting herself into this litigation. See March 18, 2019 Tr. (ECF No. 194) at 402-03; id. at 479.

The Matthews further say that they twice told their younger son's teacher that they were moving, showing that they were not trying to hide the move. In response to the factual allegations made by the School Board, the Matthews say that: (1) they changed Tonie Matthews's mailing address because she found the business address to be more reliable; (2) they enrolled their children within New Kent County's deadlines; (3) the daycare facility where G.M. was to be picked up was near Tonie Matthews' business, making

it easier to pick him up; and (4) the Matthews never filed a lawsuit regarding their move. Finally, the Matthews say that the School Board has extended this litigation beyond what was necessary instead of just allowing this case to be dismissed.

Although the Matthews acted in some ways that were inappropriate and were not always fully truthful with the School Board, the Court finds that it is inappropriate to sanction the Matthews under the Court's inherent powers because the misconduct on their part was attributable to the advice that they received from Lucas and others. The Matthews relied on Lucas, whom they believed was reliable because of her experience with autistic children and school boards. Further, the Court will not sanction the Matthews under the Court's inherent powers for not disclosing the move for the same reasons that the Court will not sanction Lucas for that conduct.[17]

### CONCLUSION

The IDEA and Virginia (like many states) allow parents to receive help in due process hearings because parents do not usually have experience or knowledge in the education of children with disabilities. And there has sprung up a cottage industry of these

---

[17] The School Board has asked for leave to supplement their Sanction Motion to prove the amount of attorneys' fees to which it is entitled. Given the resolution of the Sanctions Motion herein, that request is denied as moot.

so-called advocates. But, neither the IDEA nor Virginia law set out requirements for the training or qualification of these advocates. Nor does the law-federal or state-regulate them in any way. Nor is there any disciplinary mechanism to redress their misconduct. And, Virginia law even says that non-attorney advocates can act representational and not be guilty of practicing law without a license.

The parties agree that neither the IDEA, nor the state or federal regulators have set any qualifications for these advocates. Nor is there any mechanism to regulate them or to stop abuses such as the scorched earth practice employed by Lucas in this case. And, as this case illustrates, the powers of the courts have a limited reach.

For the foregoing reasons, HENRICO COUNTY SCHOOL BOARD'S AMENDED MOTION FOR SANCTIONS (ECF No. 199) will be granted in part as to Lucas, denied in part as to Lucas, and denied as to the Matthews.

/s/    REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October ____, 2019